**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Nelson Andres Regalado

        v.                                  Case No. 15-cv-299-PB
                                            Opinion No. 2016 DNH 165
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**MEMORANDUM AND ORDER**

        Pursuant to 42 U.S.C. § 405(g), Nelson Regalado moves to

reverse the Acting Commissioner's decision to deny his

application for Social Security disability insurance benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §

423.  The Acting Commissioner, in turn, moves for an order

affirming her decision.  For the reasons that follow, this

matter is remanded to the Acting Commissioner for further

proceedings consistent with this Memorandum and Order.


## I.   STANDARD OF REVIEW

        The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g).  However, I "must uphold a denial of social
security disability benefits unless 'the [Acting Commissioner]
has committed a legal or factual error in evaluating a
particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15,
16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490
U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting
Commissioner's findings of fact be supported by substantial
evidence, "[t]he substantial evidence test applies not only to
findings of basic evidentiary facts, but also to inferences and
conclusions drawn from such facts." Alexandrou v. Sullivan, 764
F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,
360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial
evidence is 'more than [a] mere scintilla.  It means such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d
594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the
[Acting Commissioner] to determine issues of credibility and to
draw inferences from the record evidence.  Indeed, the
resolution of conflicts in the evidence is for the [Acting

Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted). "Moreover, [the court] must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, I must "review[ ] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II.  <u>BACKGROUND</u>

The parties have submitted a Joint Statement of Material Facts. That statement (doc. no. 16) is part of the court's record and will be summarized here, rather than repeated in full.

Regalado was involved in motor vehicle accidents in 2002, 2006, and 2010 that resulted in L5-S1 spondylolisthesis (2002), and "compression fractures at T7, T8 and T10 with exaggerated kyphosis and disc bulging [at] T3-T4 and T4-T5 without cord

3

compression" (2006), (doc. no. 16 at 6).  For approximately 14 years, Regalado worked two jobs, as a boot stitcher and as a machine operator.  He stopped working as a boot stitcher in 2010.  In August 2012, while performing his job as a machine operator, he was injured.  He last worked in November 2012, and he filed his application for DIB that same month.

Regalado has been diagnosed with a variety of impairments to his back and right shoulder.  His treatment for those conditions has included medication, injections, physical therapy, home exercise, a corset, and shoulder surgery, which was performed in October 2013.

In December 2012, Ms. Susan Maydwell, PAC, saw Regalado for an initial orthopedic consultation, and she also completed a New Hampshire Workers' Compensation Medical Form for Regalado.  He was applying for compensation for the workplace injury he suffered in August 2012.  Based upon diagnoses of cervicalgia and right rotator cuff tendonitis, Ms. Maydwell indicated that Regalado had no work capacity, but had not reached maximum medical improvement.  When asked whether Regalado's injury had caused a permanent impairment, she checked the box for "undetermined."

In February 2013, a state-agency medical consultant referred Regalado to an occupational therapist, James Samson,

for a Functional Capacity Evaluation ("FCE").  Based upon a
battery of tests, Sampson indicated that Regalado had the
demonstrated ability to lift and carry 10 pounds occasionally,
push 15 pounds occasionally, and pull 20 pounds occasionally.
Under the applicable regulations, those exertional limitations
translate into a capacity for sedentary work.[1]  Samson further
opined that Regalado had a demonstrated ability for frequent
sitting and for occasional static standing, walking, stair
climbing, balancing, bending/stooping, crouching/squatting,
crawling, twisting/spinal rotation, low-level work, fine finger
manipulation, light and firm grasping, pinching, and forward and
overhead reaching.

     In addition to evaluating Regalado's functional capacity,
Samson also administered three tests to evaluate the reliability
of Regalado's statements about his symptoms.  After reporting
the results of those tests,[2] Samson had this to say:

> Overall test findings, in combination with clinical
> observations, suggest considerable inconsistency to
> the reliability and accuracy of the client's reports
> of pain and disability.  In describing such findings,
> this evaluator is by no means implying intent.

---

[1] "Sedentary work involves lifting no more than 10 pounds at a
time . . . ."  20 C.F.R. § 404.1567(a).

[2] Those tests included Waddell's Inappropriate Symptom
Questionnaire, on which Regalado's score of 4/5 resulted in a
rating of "[i]naccurate responses."  Administrative Transcript
at 336.

>      Rather, it is simply stated that the client can do
>      more at times than [he] currently state[s] or
>      perceive[s].  While [his] subjective reports should
>      not be disregarded, they should be considered within
>      the context of such RPDR findings.

Administrative Transcript (hereinafter "Tr.") at 336 (doc. no.
5).

In March 2013, state-agency medical consultant Dr. Jonathan
Jaffe, who did not examine Regalado, assessed Regalado's
residual functional capacity ("RFC")[3] in reliance upon a review
of his medical records.  Dr. Jaffe's RFC assessment is reported
on a Disability Determination Explanation ("DDE") form which
bears both his signature, as a medical consultant, and the
signature of Joanne Degnan, in her capacity as a "Disability
Adjudicator/Examiner," Tr. at 121.

According to Dr. Jaffe, Regalado could lift and/or carry 20
pounds occasionally and 10 pounds frequently, and had the same
capacities for pushing and/or pulling.  Under the applicable
regulations, those exertional limitations translate into a
capacity for light work.[4]  Dr. Jaffe further opined that Regalado

---

[3] "Residual functional capacity" is a term of art that means "the
most [a claimant] can still do despite [his] limitations."  20
C.F.R. § 404.1545(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time
with frequent lifting or carrying of objects weighing up to 10
pounds."  20 C.F.R. § 404.1567(b).

could stand and/or walk with normal breaks for about six hours
in an eight-hour work day, and could also sit for about six
hours in an eight-hour workday.  He also found that Regalado had
no postural, visual, or communicative limitations and had a
single manipulative limitation: a capacity to engage in only
"occasional overhead reaching [with his] right upper extremity."
Tr. at 118-19.

In addition to rendering an opinion on Regalado's RFC, Dr.
Jaffe had this to say about Samson's FCE report:

> F CE was obtained 3/13.  Claimant reported pain – was
> unable to interact in English.  There was no use of
> walking aids.  Musculoskeletal exam was intact.  There
> was pain reported with testing which did appear to be
> with less than full effort, with four of five
> Waddell's signs present.  Examiner indicated overall
> test findings in combination with clinical observation
> suggested considerable inconsistency to the
> reliability and accuracy of the claimant's reports of
> pain and disability – totality of F CE report was
> consistent with light work function.[5]

Tr. at 119.  While Dr. Jaffe correctly characterized Samson's
FCE report as calling into question the validity of Regalado's
reports of pain and disability, another portion of the DDE form
titled "Assessment of Policy Issues," that may or may not have

_____

[5] Given Samson's determination that Regalado was limited to
lifting 10 pounds occasionally, it is not at all clear how Dr.
Jaffe concluded that Samson's FCE report was consistent with a
"light work function" unless he added 10 more pounds of lifting
capacity to Samson's conclusions in some unspecified way.

been drafted by Dr. Jaffe,[6] includes this statement: "Claimant's performance on FCE was not consistent and resulted in a low degree of reliability of findings," Tr. at 117.  That is a mischaracterization of what Samson said in his FCE report; he questioned the reliability of Regalado's reports of pain and disability, not the reliability of the findings he made concerning Regalado's functional capacity.

In late March 2013, after the Social Security Administration ("SSA") initially denied his application for benefits, Regalado saw Dr. Kathleen Smith for pain management and "to get help appealing a [social security] disability denial," Tr. at 394.  Dr. Smith provided the following assessment:

> LOW BACK PAIN.  Severe with radicular signs in L5 distribution.  Need to check recent [X-Ray] to make sure no exacerbation of previous lumbar compression fractures.  Needs to be re-evaluated as to whether [he is] a surgical candidate.  Disabled from [activities of daily living] now, and certainly currently unable to work.  Will get outside imaging studies.

Tr. at 396.  Under the heading "Patient Instructions," Dr. Smith wrote: "I will look at records and see if a surgery consult is indicated and whether I can certify you as disabled in a letter.

---

[6] The layout of the DDE form makes it difficult to determine whether the "Assessment of Policy Issues" section was written by Dr. Jaffe or Joanne Degnan.

8

This may take 2-3 weeks."  Tr. at 396.  It does not appear that Regalado has ever had back surgery, and despite the fact that he saw Dr. Smith in both April and May of 2013, the record does not appear to include either a letter from Smith certifying Regalado as disabled or a formal RFC assessment by Smith.

After Regalado's claim for DIB was denied by the SSA, he received a hearing before an administrative law judge ("ALJ"). At the hearing, the ALJ heard testimony from Regalado, but did not take testimony from a vocational expert ("VE").  After the hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3.  The claimant has the following severe impairments: degenerative disc disease and right shoulder tendonitis (20 CFR 404.1520(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . . .
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for limiting overhead reaching with the right shoulder to occasional.
>
> . . . .

9

6.   The claimant is unable to perform any past
relevant work (20 CFR 404.1565).

. . . .

10.   Considering the claimant's age, education, work
experience, and residual functional capacity, there
are jobs that exist in significant numbers in the
national economy that the claimant can perform (20 CFR
404.1569 and 404.1569(a)).

Tr. at 23, 24, 25, 27.  Based upon her assessment of Regalado's

RFC, her own determination that the one limitation she found had

"little or no effect on the occupational base of unskilled light

work," Tr. at 27, and information from the DDE form appearing

under the heading "Assessment of Vocational Factors," the ALJ

determined that Regalado was able to perform the jobs of usher,

tanning salon attendant, and fruit distributor.  The Dictionary

of Occupational Titles ("DOT")[7] defines usher and fruit

distributor as light duty jobs, and while I was unable to

determine the exertional level of the tanning salon attendant

job, the parties appear to agree that that job is also light

duty.

---

[7] The DOT is published by the United States Department of Labor,
and the SSA regulations designate it as a source of vocational
evidence for use in making disability determinations.  See 20
C.F.R. § 404.1560(b)(2).

## III.   <u>DISCUSSION</u>

### A.   <u>The Legal Framework</u>

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(E).  The only question in this case is whether Regalado was under a disability from November 13, 2012, through January 23, 2014, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  <u>See</u> 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

<u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as

the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that he is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at
> Step 4 to show that he or she is unable to do past
> work due to the significant limitation, the
> Commissioner then has the burden at Step 5 of coming
> forward with evidence of specific jobs in the national
> economy that the [claimant] can still perform.  Arocho
> v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
> (1st Cir. 1982).  If the [claimant's] limitations are
> exclusively exertional, then the Commissioner can meet
> her burden through the use of a chart contained in the
> Social Security regulations.  20 C.F.R. § 416.969;
> Medical-Vocational Guidelines, 20 C.F.R. pt. 404,
> subpt. P, App. 2, tables 1-3 (2001), cited in 20
> C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458
> (1983). "The Grid," as it is known, consists of a
> matrix of the [claimant's] exertional capacity, age,
> education, and work experience.  If the facts of the
> [claimant's] situation fit within the Grid's
> categories, the Grid "directs a conclusion as to
> whether the individual is or is not disabled."  20
> C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited
> in 20 C.F.R. § 416.969.  However, if the claimant has
> nonexertional limitations (such as mental, sensory, or
> skin impairments, or environmental restrictions such
> as an inability to tolerate dust, id. § 200(e)) that
> restrict his [or her] ability to perform jobs he [or
> she] would otherwise be capable of performing, then
> the Grid is only a "framework to guide [the]
> decision," 20 C.F.R. § 416.969a(d) (2001).  See also
> Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)
> (discussing use of Grid when applicant has
> nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

> [i]n assessing a disability claim, the [Acting
> Commissioner] considers objective and subjective
> factors, including: (1) objective medical facts; (2)
> [claimant's] subjective claims of pain and disability
> as supported by the testimony of the [claimant] or
> other witness; and (3) the [claimant's] educational
> background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 22-23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

**B.    Regalado's Claims**

In his memorandum of law, Regalado identifies the following

grounds for reversing the ALJ's decision: (1) the ALJ erred at

Step 5 by not receiving evidence from a VE; (2) "[t]he ALJ erred

by failing to properly weigh and consider opinion evidence"

presented to her; and (3) substantial evidence supports neither

the ALJ's RFC finding nor her credibility finding.  See Doc. No.

9-1 at 3, 7, 12.  Regalado's second and third claims are both

meritorious.

1.   Opinion Evidence

Regalado claims that the ALJ erred in her consideration of

both Samson's FCE report and the opinions provided by Dr. Smith.

I agree that the ALJ mishandled Samson's FCE report.  That

mistake is material because Samson assessed Regalado as having

the RFC for only sedentary work while the ALJ determined that he

was capable of performing three different light-duty jobs.

I begin by acknowledging, as does Regalado, that because Samson is an occupational therapist rather than a licensed physician, he is not an "acceptable medical source" for the purpose of providing an opinion on Regalado's RFC.  See 20 C.F.R. § 404.1513; see also Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006).  Although there are certain limitations on the uses to which evidence from "other sources" such as Samson may be put, see SSR 06-03p, 2006 WL 2329939, at *2, "information from such 'other sources' . . . may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function," id.  For that reason, the Social Security regulations require the decisionmaker to consider evidence from such "other sources." See id. at *4 (citing 20 C.F.R. § 404.1527).  To assist decisionmakers in meeting that requirement, the SSA has promulgated guidance on how to consider evidence, including opinions, from "other sources" such as Samson.

According to that guidance, the factors to be used when evaluating opinions from "other sources" include: (1) "[h]ow long the source has known [the claimant] and how frequently the source has seen [the claimant]"; (2) "[h]ow consistent the opinion is with the other evidence" of record; (3) "[t]he degree

14

to which the source presents relevant evidence to support [his
or her] opinion"; (4) "[h]ow well the source explains [his or
her] opinion"; (5) "[w]hether the source has a specialty or area
of expertise related to the [claimant's] impairment(s)"; and (6)
"[a]ny other factors that tend to support or refute the
opinion." SSR 06-03p, 2006 WL 2329939, at *4-5.  SSR 06-03p
goes on to explain that "depending on the particular facts in a
case, and after applying the factors for weighing opinion
evidence, an opinion from a medical source who is not an
'acceptable medical source' may outweigh the opinion of an
'acceptable medical source.'"  Id. at *5.  Finally:

> Since there is a requirement to consider all relevant
> evidence in an individual's case record, the case
> record should reflect the consideration of opinions
> from medical sources who are not "acceptable medical
> sources" and from "non-medical sources" who have seen
> the claimant in their professional capacity.  Although
> there is a distinction between what an adjudicator
> must consider and what the adjudicator must explain in
> the disability determination or decision, the
> adjudicator generally should explain the weight given
> to opinions from these "other sources," or otherwise
> ensure that the discussion of the evidence in the
> determination or decision allows a claimant or
> subsequent reviewer to follow the adjudicator's
> reasoning . . . .

Id. at *6.  In light of the foregoing guidance, there are
problems with both what the ALJ said about Samson's FCE report
and what she did not say about it.

    After describing Samson's specific findings concerning

15

Regalado's limitations, the ALJ continued:

> Further, the musculoskeletal exam was intact and there
> was no use of a cane or other walking aid and the
> claimant, who reported pain on testing, exhibited four
> of the five Waddell's signs indicating symptom
> exaggeration, and he exhibited less than full effort.
> The evaluator assessed that test findings and
> observation showed such inconsistency that results
> were held unreliable.  A nonexamining agency program
> physician opined that the testing reflected the
> capacity for not sedentary but light work, citing the
> claimant's activities of daily living, including
> driving, shopping for a hour at a time, walking for
> 100 meters and the fact that he appeared with a left
> arm brace where there was no impairment affecting the
> left arm.

Tr. at 25-26 (citation to the record omitted).

I begin with what is missing from the ALJ's discussion. First, while the ALJ mentioned the disagreement that Dr. Jaffe had with Samson's FCE report, she mentioned none of the other factors listed in SSR 06-03p, several of which would tend to support the validity of Samson's opinion.[8]  Moreover, while the ALJ expressly stated that she gave little weight to Dr. Smith's March 29, 2013, opinion, she did not say how much weight she gave Samson's opinion.

What the ALJ did say, specifically, is this: "The evaluator [i.e., Samson] assessed that test findings [i.e., four of five

---

[8] These factors include Samson's presentation of relevant evidence to support his opinions, the explanations he gave for those opinions, and his area of expertise.

Waddell's signs] and observation showed such inconsistency that
results were held unreliable."  Tr. at 25.  To be sure, Samson
reported "considerable inconsistency to the reliability and
accuracy of <u>the client's reports of pain and disability</u>."  Tr.
at 336 (emphasis added).  But when he assessed the reliability
of the findings that resulted from specific tests of functional
capacity, Samson said this:

> "<u>Test of Light Strength Handling</u>": "Results appear
> reliable, and no inconsistencies noted.  Majority of
> symptoms associated with prolonged neck positioning,
> repetitive reaching, repetitive bending, and low level
> work."
>
> . . . .
>
> "<u>Purdue Pegboard</u>": "Results appear reliable, and no
> inconsistencies noted.  Competitive test performance
> evident during evaluation."
>
> . . . .
>
> "<u>Lifting Capacity</u>": "Client able to do more than
> reflected in intake and on pain scales."
>
> . . . .
>
> "<u>Grip Testing</u>" with the "<u>Janmar Hand Dynamometer</u>":
> "Results indicative of low percentile for age and
> gender as well as evidence of less than full effort in
> right [upper extremity] and full effort in Left [upper
> extremity]."
>
> . . . .
>
> "<u>Low Level Mobility</u>": "Results appear reliable, and no
> inconsistencies noted.  Competitive test performance
> evident during evaluation."

. . . .

"Balance": "Decreased balance noted specifically on
right side.  Reports of increased right leg pain
during balance tasks."

Tr. at 334-36 (underlining added).  In light of those

assessments, it is evident that the ALJ erred by construing

Samson's appraisal of the reliability and accuracy of Regalado's

statements about his symptoms as a comment on the reliability of

the results he reported concerning Regalado's functional

capacity.  Samson said that Regalado's statements about pain and

disability were unreliable; he did not say that the demonstrated

functional abilities he reported were unreliable.  In fact, he

said quite the opposite, expressly stating that the results of

many specific tests were reliable, and noting test results

showing more capacity than Regalado had reported.  In short, the

ALJ's mischaracterization of Samson's report, either on her own

or in reliance upon the erroneous characterization in the DDE

form, compels me to conclude that the ALJ's apparent (but

unstated) decision to discount Samson's opinion is not supported

by substantial evidence.

In conjunction with the ALJ's failure to provide the kind

evaluation of Samson's opinion that is called for by SSR 06-03p,

her mischaracterization of Samson's opinion is an error that

requires remand.

18

2.   <u>Credibility</u>

Regalado also claims that the ALJ erred in her assessment of the credibility of his statements about his symptoms.  Even if the ALJ's handling of Samson's FCE report did not warrant a remand, her credibility assessment would.

I begin by noting that when the ALJ made her decision on Regalado's claim, credibility assessments by SSA decisionmakers were governed by SSR 96-7p, 1996 WL 374186 (July 2, 1996).  Since then, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  Thus, the ALJ's decision will be evaluated under SSR 96-7p, but on remand, SSR 16-3p shall control.

Credibility is an issue when an ALJ must evaluate a claimant's symptoms, i.e., his or her "own description of his or her physical or mental impairment(s)," SSR 96-7p, 1996 WL 374186, at *2.  SSR 96-7p explains that "an individual's statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled."  <u>Id.</u>  Rather,

> [w]hen "symptoms, such as pain, fatigue, shortness of
> breath, weakness, or nervousness," [SSR 96-7p, 1996 WL
> 374186, at *2], are alleged, SSR 96-7p prescribes a
> two-step evaluation process:
>
>> * First, the adjudicator must consider whether
>> there is an underlying medically determinable

19

> physical or mental impairment(s)—i.e., an
> impairment(s) that can be shown by medically
> acceptable clinical and laboratory diagnostic
> techniques—that could reasonably be expected to
> produce the individual's pain or other symptoms.
> . . . If there is no medically determinable
> physical or mental impairment(s), or if there is
> a medically determinable physical or mental
> impairment(s) but the impairment(s) could not
> reasonably be expected to produce the
> individual's pain or other symptoms, the symptoms
> cannot be found to affect the individual's
> ability to do basic work activities.
>
> * Second, once an underlying physical or mental
> impairment(s) that could reasonably be expected
> to produce the individual's pain or other
> symptoms has been shown, the adjudicator must
> evaluate the intensity, persistence, and limiting
> effects of the individual's symptoms to determine
> the extent to which the symptoms limit the
> individual's ability to do basic work activities.
> For this purpose, whenever the individual's
> statements about the intensity, persistence, or
> functionally limiting effects of pain or other
> symptoms are not substantiated by objective
> medical evidence, the adjudicator must make a
> finding on the credibility of the individual's
> statements based on a consideration of the entire
> case record.

Id.

Guziewicz v. Astrue, 2011 DNH 010, 11-12.  Guziewicz further

explains that

> SSR 96-7p outlines a specific staged inquiry that
> consists of the following questions, in the following
> order: (1) does the claimant have an underlying
> impairment that could produce his or her symptoms?;
> (2) if so, are the claimant's statements about his or
> her symptoms substantiated by objective medical
> evidence?; and (3) if not, are the claimant's
> statements about those symptoms credible?

20

Id. at 13.  Moreover, when answering the second question, an ALJ must "discuss . . . how [a claimant's] statements [are] inconsistent with the objective medical evidence."  Id. at 16 (emphasis added by Guziewicz) (quoting Santiago v. Astrue, Civil Action No. 09-30006-KPN, 2009 WL 3517611, at *8 (D. Mass. Oct. 14, 2009).  Such a discussion, in turn, should take the form of a comparison between the claimant's specific statements and the objective medical evidence.  See id. at 16-17

Here, the ALJ clearly indicated the specific statements she was evaluating:

> The claimant testified that he cannot lift his right upper extremity overhead and has difficulty with any movement.  He testified he had finger numbness and swelling as well.  He has difficulty holding on to articles and the swelling is so severe he cannot close his hand or drive.  He is right-hand dominant.  The claimant stated that providers told him not to use his right upper extremity.  He takes medication to sleep and sometimes wakes up.  He sleeps during the day in his recliner chair for 4 or 5 hours, stating that he has to lay down during the day because of his back.  During the day he does exercises for his back.  He has to use a cane because he loses the power in his leg.  He has back pain on standing.  Sometimes to get out of bed he has to roll over to put his feet down.

Tr. at 26.  She then offered the following evaluation of those statements:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

> limiting effects of these symptoms are not entirely
> credible for the reasons explained in this decision.
>
> The record shows no deformity of the shoulder and at
> least functional, if not normal, range of motion of
> the neck.  He has almost full leg strength despite the
> claimant's statements that he has falls.  A
> nonexamining agency program physician assessed that
> the thoracolumbar findings on the MRI reflected only
> mild degenerative disc disease.  Further, the
> functional capacity assessment findings were not
> consistent and are not highly reliable.  A
> nonexamining agency program physician noted that there
> was a strong suspicion of malingering.

Tr. at 27 (citation to the record omitted).  There are several

problems with the ALJ's credibility assessment.

First, she appears to give short shrift to the question of

whether Regalado's statements about his symptoms were

substantiated by objective medical evidence.  In the first

paragraph of her assessment, she finds that Regalado's

impairments could cause the symptoms he complains of, but then

she goes directly to the question of credibility, seeming to

bypass the question of substantiation for those statements in

the form of objective medical evidence.

Although the ALJ references objective medical evidence in

the second paragraph of her assessment, several of those

references are insufficiently explained.  For example, while the

ALJ mentions evidence showing "no deformity of the shoulder and

at least functional, if not normal, range of motion of the

neck," Tr. at 27, she does not link that medical evidence to any
particular statement by Regalado about the limiting effects of
his impairments, much less indicate <u>how</u> either of those two
findings undermines any such statement.  Then she states that
"[a] nonexamining agency program physician assessed that the
thoracolumbar findings on the MRI reflected only mild
degenerative disc disease."  Tr. at 27.  But again, the ALJ did
not link that medical evidence to any particular statement about
reduced function or indicate how that evidence undermines such a
statement.  Moreover, there are a host of symptoms that the ALJ
does not address at all, such as numbness and swelling in
Regalado's hands, and an alleged need to lay down and sleep
during the day.

        In sum, the ALJ identified statements by Regalado
concerning a variety of symptoms that could significantly cut
into the range of work he can do, but she did not adequately
explain her decision not to credit those statements.  That is a
second basis for remanding this matter.[9]

_____

[9] Regalado also claims that the ALJ erred by determining, without
the guidance of a vocational expert, that his limitation to only
occasional overhead reaching with his right arm had "little or
no effect on the occupational base of unskilled light work," Tr.
at 27.  Because this matter is being remanded on other grounds,
and because Regalado could be assessed with a different RFC on
remand, I decline to reach Regalado's third claim of error
because any analysis of the issue underlying that claim would be

## IV. <u>CONCLUSION</u>

For the reasons given, the Acting Commissioner's motion for an order affirming her decision (doc. no. 11) is denied, and Regalado's motion to reverse that decision (doc. no. 9) is granted to the extent that this matter is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk of the court shall enter judgment in accordance with this Memorandum and Order and close the case.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


September 13, 2016

cc:   James Christopher Torrisi, Esq.
      Natalie J. Friedenthal, Esq.
      T. David Plourde, Esq.

_____

speculative at best.

24